UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DAVID STEELE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LINCOLN NATIONAL | ) |
| LIFE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

COMES NOW Plaintiff, David Steele, and for his claims and causes of action against Defendant, The Lincoln National Life Insurance Company, states as follows:

PARTIES

1. David Steele ("Steele") is a resident and citizen of the State of Missouri.
2. Lincoln National Life Insurance Company ("Lincoln") is an out of state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Lincoln in this action.

JURISDICTION AND VENUE

3. Steele brings his claims pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.
4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).
5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in this district under 29 U.S.C. § 1132(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.
7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

## STATEMENTS OF FACT

9. Steele worked as a Machine Set Up Operator for Johnson Controls, Inc. ("JCI").
10. During his employment, Steele began to suffer from impairments related to his medical conditions. Steele's ability to perform the duties of his job became compromised by serious medical conditions.
11. JCI sponsored a group long-term disability ("LTD") benefits plan ("Plan") for its participating employees.
12. The Plan is an employee welfare benefits plan as defined by 29 U.S.C. § 1002(1).
13. The Plan offered disability benefits to qualifying JCI employees, including Steele.
14. At all relevant times, Steele has been a participant and a covered person under the terms of the Plan.
15. JCI is the administrator of the Plan.
16. JCI delegated or attempted to delegate the function of issuing the STD and LTD claim determinations to Lincoln.
17. JCI and Lincoln entered into an administrative services contract through which JCI paid Lincoln for acting as claim administrator.
18. On December 17, 2020, Steele applied for LTD benefits.

19. Following its review, Lincoln approved Steele from February 5, 2021, to February 4, 2023, finding that he was totally disabled from performing the material duties of his own occupation.

20. On November 28, 2022, Lincoln purchased a medical records review by their consulting physician Dr. Annie Layno-Moses.

21. Dr. Layno-Moses did not meet, examine, or treat Steele, rather she was provided a number of records from Lincoln which she reviewed to make her determination.

22. Dr. Layno-Moses reviewed records from November 28, 2018, through November 4, 2022. Based on those records she opined that Steele "has impairments that translate into restrictions and limitations from - 10/01/2022 to - 02/05/2023."

23. Dr. Layno-Moses opined:

> *Based on the information provided, the claimant has been experiencing chronic pain in his low back since 2018, and he was found to have L1 vertebral compression fracture and multilevel degenerative disc disease in his lumbar spine. Despite physical therapy and series of injections, the claimant has continued to experience chronic pain in his low back. Considering the claimant's persistent pain symptoms with a history of L1 vertebral compression fracture and multilevel degenerative disc disease in his lumbar spine, the claimant is physically impaired. Therefore, the claimant requires restrictions and limitations as outlined below:*
>
> *Sitting: Unrestricted*
> *Standing: Frequently, 30 minutes at a time, for up to 3 hours per day*
> *Walking: Frequently, 30 minutes at a time, for up to 3 hours per day*
> *Lifting: Occasionally up to 15 lbs. BUE*
> *Carrying: Occasionally up to 15 lbs. BUE*
> *Pushing: Occasionally up to 15 lbs. BUE*
> *Pulling: Occasionally up to 15 lbs. BUE*
> *Climbing stairs: Occasionally*
> *Balancing: Occasionally*
> *Stooping: Occasionally*
> *Kneeling: Occasionally*
> *Crouching: Occasionally*
> *Crawling: Never*
> *Reaching: Occasionally, overhead and below waist levels BUE; Unrestricted, to desk level BUE*
> *Using lower extremities for foot controls: Unrestricted BLE*
> *Fine manipulation: Unrestricted BUE*
> *Simple and firm grasping: Unrestricted BUE*
> *No climbing ladders*
> *No working at unprotected heights*
> *No operating heavy machinery*

24. Dr. Layno-Moses's evaluation of Steele's functional capacity was incomplete. Dr. Layno-

Moses did not review Steele's occupation, did not perform a function-by-function analysis supporting her determination of Steele's functionality, nor did she consider all of Steele's medical conditions. Rather, Dr. Layno-Moses focused solely on Steele's orthopedic conditions and failed to consider secondary conditions such as centrilobular emphysema, dizziness, imbalance, orthostatic lightheadedness, and a spinning sensation while lying down or reclining.

25. On December 12, 2022, Lincoln purchased a Transferable Skills Analysis performed by Robert Wegman, MRC, CRC, CEAS, Vocational Rehabilitation Consultant, and supervised by Kevin T. Ufier, M.Ed. CRC, National Director of Disability & Absence Services.
26. Both Mr. Wegman and Mr. Ufier were employed by Genex, a company routinely hired to provide opinions to insurance companies.
27. Mr. Wegman and Mr. Ufier opined that Steele could perform occupations situated at the Light exertional level as determined by the Dictionary of Occupational Titles.
28. None of the occupations identified by Mr. Wegman and Mr. Ufier have been updated by the DOT since 1986.
29. On December 17, 2022, Lincoln denied Steele's LTD claim.
30. Lincoln's denial reasoned that Steele was capable of working full time based on the findings of its medical and transferable skills review.
31. Lincoln failed to provide its reviews to Steele prior to denying his claim.

32. The Plan provided that employees would be entitled to receive LTD benefits if they became "Disabled" which The Plan defines as follows:

> **"Disability"** or **"Disabled"**, with respect to Long Term Disability, means:
>
> Applicable to Class 2, 3, 5, 6, 7:
>
> a. if the Covered Person is eligible for the Maximum Own Occupation benefit, **"Disability"** or **"Disabled"** means during the Elimination Period and until the Covered Person reaches the end of the Maximum Benefit Period, as a result of an Injury or Sickness, he is unable to perform the Material and Substantial Duties of his Own Occupation.
>
> Applicable to Class 1, 4:
>
> b. i. if the Covered Person is eligible for the 24 Month Own Occupation benefit, **"Disability"** or **"Disabled"** means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
>
> ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

33. On May 22, 2023, Steele submitted a written appeal of Lincoln's denial and provided additional evidence supporting his inability to perform the essential duties of any occupation.

34. In response to Steele's appeal, Lincoln performed a second peer review hiring Dr. Andrew Nava to perform a medical review of Steele's claim.

35. Dr. Nava's review contained opinions that were completely contrary to objective medical evidence, concluding that Steele did not possess a single limitation.

36. Dr. Nava did not perform a function-by-function analysis of Steele's conditions, nor did he attempt to reconcile his findings with existing medical imaging identifying degenerative disc disease of Steele's lumbar spine; retrolisthesis of L2 on L3; bilateral facet arthrosis at L1-2; bilateral facet arthrosis at L2-3 with ligamentum flavum thickening, osteophyte complex bulge, spinal canal stenosis, bilateral lateral recess narrowing, and bilateral neuroforaminal narrowing; L3-4, disc desiccation with broad-based disc bulges, bilateral facet arthrosis, ligamentum flavum thickening, bilateral lateral recess narrowing, bilateral neuroforaminal

narrowing, and spinal canal stenosis; L4-5 disc desiccation with broad-based disc bulges, bilateral facet arthrosis, ligamentum flavum thickening, bilateral recess narrowing, spinal canal stenosis, and bilateral neuroforaminal narrowing, worse on the left, and; L5-S1 bilateral facet arthrosis, ligamentum flavum thickening, bilateral neuroforaminal narrowing, and disc bulges.

37. Steele's appeal cited numerous medical records, detailing treatment and restrictions rendering him incapable of performing any of the occupations identified by Lincoln on a full-time basis.

38. On July 28, 2023, Lincoln upheld its denial of benefits.

39. At all relevant times, Steele was and remains "Totally Disabled" under the Plan.

40. Steele has exhausted all administrative remedies.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

41. Steele realleges the preceding paragraphs as if fully set forth herein.

42. Steele is entitled to all unpaid and accrued LTD benefits, as Lincoln;

    a. Made an unfavorable decision without substantial evidence;

    b. Failed to properly consider Steele's medical impairments and resulting limitations;

    c. Ignored evidence that Steele's conditions have not improved to the present; and

    d. Issued an unfavorable decision that was arbitrary and capricious.

43. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Steele is entitled to an award of actual damages for losses suffered.

44. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

45. Lincoln has not satisfied its obligation to pay Steele LTD benefits.

46. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Steele prays for judgment against Lincoln for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

COUNT II
29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

47. Steele realleges the preceding paragraphs as if fully set forth herein.

48. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

49. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

> "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

50. As the Plan's designated claims administrator and entity exercising discretion in claims administration, Lincoln is a fiduciary.

51. Steele participated in Lincoln LTD benefits plans as previously indicated.

52. As the payor of benefits and the entity responsible for benefits determinations Lincoln operates under an inherent structural conflict of interest.

53. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs Lincoln's actions as a fiduciary.

54. Lincoln breached its fiduciary duty in:

a. Referring Steele's claim for medical review to persons who were not able to exercise independent thought or judgment, or deviate from Lincoln's previously expressed position;

b. Referring Steele's claim for medical review to a person who was not qualified to render any medical judgments or opinions;

c. Engaging in a direct structural conflict of interest by assuming the role of both claim administrator and potential payor of benefits;

d. Engaging in a direct structural conflict of interest by referring Steele's claim to a person who is directly answerable to Lincoln and whose employment and compensation is determined by Lincoln; and

e. Failing to comply with its internal guidelines and claims processing procedures. Its claims handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations.

55. Lincoln denied Steele's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

56. Lincoln failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with a conflict of interest and breached its fiduciary duty to both Steele and the Plan's participants and beneficiaries generally.

57. Lincoln's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

58. Lincoln's violations of regulations alone allow Steele the right to pursue any remedy

under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(l)(2)(i).

59. Lincoln's violations of federal regulation also subject its decision to *de novo* review.

60. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Steele prays for an order that Lincoln retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Lincoln in its fiduciary capacity; for an equitable accounting of benefits that Lincoln has withheld; for the disgorgement of profits enjoyed by Lincoln in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

BURNETTDRISKILL, Attorneys

By: /s/ Derrick A. Pearce

Derrick A. Pearce, Mo. # 42793
Kyle H. Sciolaro, Mo. # 64568
Paul J. Taylor, Mo. # 72159
103 W 26th Ave., Ste. 290
North Kansas City, MO 64116
P: 816.781.4836
F: 816.792.3634
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ptaylor@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF